UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                         :

UNITED STATES OF AMERICA       :

        -v.-             :
                                   :        S4 11 Cr. 161 (JSR)

STANLEY NG,                        :

            Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

                                                              PREET BHARARA
                                                              United States Attorney
                                                              Southern District of New York
                                                             Attorney for the United States
                                                                    of America

AVI WEITZMAN
Assistant United States Attorney

      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
UNITED STATES OF AMERICA            :
                                                    :
        -v.-                                :
                                                    :          S4 11 Cr. 161 (JSR)
STANLEY NG,                             :
                                                   :
                Defendant.        :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum for the Court's consideration in connection with the sentencing of the defendant Stanley Ng. For the reasons below, the Government respectfully submits that the applicable guidelines range is 6 to 12 months' imprisonment (Zone B), and that a sentence within that range is appropriate and "sufficient, but not greater than necessary, to comply with the purposes" of sentencing under 18 U.S.C. § 3553(a)(2).

**I.    BACKGROUND**

In or about late 2010, in connection with the FBI's broad investigation of insider trading at hedge funds through expert-networking firms, the Government developed evidence that, from in or about 2007 through in or about early 2009, Winifred Jiau, a/k/a "Wini," had inside sources at NVIDIA Corporation ("NVIDIA") and Marvell Technology Group, Ltd. ("Marvell") – both publicly-traded technology companies over the Nasdaq Stock Exchange – who provided her with material, non-public information ("Inside Information") about those companies' quarterly financial results before such results were publicly announced by the companies. Jiau then sold the Inside Information to portfolio managers at various hedge funds, including Samir Barai and

Noah Freeman. Multiple hedge funds, in turn, traded on the information provided by Jiau, yielding millions of dollars in illegal profits. In return, the hedge funds paid Jiau over $200,000 over the two-year period; such payments were typically made through an expert-networking firm located in California. Jiau was arrested on or about December 28, 2010, and charged with securities fraud and wire fraud based on such insider trading.

Further investigation revealed that the sources of Jiau's Inside Information were Son Ngoc Nguyen, a/k/a "Sonny," who was employed in the finance department of NVIDIA, and the defendant Stanley Ng, who was employed in the Finance Department of Marvell as the SEC Reporting Manager. Nguyen agreed to cooperate with the Government's investigation and ultimately testified against Jiau at her trial. In so doing and in the proffers that preceded his testimony, Nguyen explained the origins of the "investment club" in which he and Ng participated with Jiau.

### A. Ng and Nguyen Join Jiau's "Investment Club"

Nguyen testified that he first met Jiau in or about 2007, after she started working as a contract employee in NVIDIA's finance department. Thereafter, they became platonic friends and often had lunch or coffee together. As their friendship developed, Jiau often discussed stocks with Nguyen, and he was impressed by her knowledge of the semiconductor industry and the stock market. One day in or about 2007, while Jiau remained a contract employee at NVIDIA, Jiau came to Nguyen with a proposal. She stated that she had many "vertical contacts" at other semiconductor companies, including Taiwan Semiconductor Manufacturing Corporation ("TSMC"), and that she wanted to start an "investment club." She asked Nguyen to be part of the investment club and to provide Jiau, who would soon complete her employment at NVIDIA, with NVIDIA's non-public financial results prior to the quarterly earnings announcement. In

2

return, Jiau promised to provide Nguyen with the tips she gathered from her contacts at other public companies. Nguyen agreed to this arrangement. Jiau also asked Nguyen to recruit others to the investment club. Nguyen told his friend Stanley Ng, whom he had known for several years, about the club. Ng agreed to join as well.

### B. Trades based on Marvell Inside Information provided by the Defendant

As the evidence at the Jiau trial proved beyond a reasonable doubt, Ng provided Jiau with Marvell's non-public quarterly earnings information on numerous occasions between early 2007 and early 2009. Indeed, toll records reflect repeated and regular telephone conversations between Ng and Jiau from March 2007 through late February 2009, with many such telephone calls in the days or weeks prior to Marvell's quarterly announcement. A summary of the information he provided and what Jiau did with the information for just one such quarter was detailed to the jury in the Jiau trial, and is summarized below:

As the jury concluded at trial, Ng provided to Jiau Inside Information about Marvell's quarterly earnings report in May 2008. More specifically, on or about May 22, 2008, at approximately 2:46 p.m. EST, Barai sent Jiau an e-mail asking her whether she had the "M cookbook recipe," which is a reference to Marvell's non-public revenue and earnings information. In an e-mail dated May 23, 2008 at approximately 12:27 a.m., Jiau responded "that's going to cost you." In a later message on May 23, at approximately 6:22 a.m., Barai agreed to pay Jiau, stating that he "will arrange for something from PGR."

On or about May 23, 2008, Jiau had a telephone conversation with Barai, during which Jiau told Barai that Marvell's upcoming quarterly earnings report would include revenues of approximately $805 million, gross margins of approximately 53%, and earnings per share ("EPS") of five or six cents above Wall Street's expectations. This telephone conversation was

3

consensually-monitored by Barai's research analyst, Jason Pflaum. Jiau had obtained such information in a conversation with Ng days prior.

On or about May 28, 2008, at approximately 2:36 a.m. EST, Jiau sent Barai an instant message ("IM") communication instructing Barai to "just call me. I left you a voice message. did you check it. please call me for the cook book. thx." Approximately one hour later, Jiau sent Barai an e-mail stating, "Please call. I got it. thx." Those messages followed approximately two hours after a phone call between Jiau and Ng.

On or about May 28, 2008, at approximately 11:19 a.m., Barai had a telephone conversation with Jiau, which Barai asked Pflaum to listen to surreptitiously to assist Barai. During that conversation, Jiau told Barai that Marvell's quarterly revenues came in at $804 million, that Marvell's non-GAAP [referring to Generally Accepted Accounting Principles] gross margins would be approximately 52%, and that Marvell would announce GAAP EPS of approximately 11 cents per share.[1]

On or about May 29, 2008, following the close of trading, Marvell announced its financial results for the quarter ending on May 3, 2008. The company announced net revenues of $804 million, reported net income under GAAP of $69.9 million, or 11 cents per share (diluted), and non-GAAP gross margins of 52%. On the following day, shares of Marvell closed

---

[1] On or about May 23, 2008, during and after Barai's conversation with Jiau, Barai caused Barai Capital Management ("BCM") to purchase approximately 118,400 shares of Marvell. Between May 23, 2008 and May 29, 2008, BCM purchased over 300,000 shares of Marvell (worth approximately $4.4 million) at prices ranging from $13.98 to $14.41 per share. BCM then sold its entire position in Marvell between May 29, 2008 and June 11, 2008, at prices ranging from $15.15 to $17.15 per share. Also on May 29, 2008, BCM purchased 100 Marvell June call options with a strike price of $15, which it sold the following day. In total, as a result of the Marvell inside information Barai had obtained from Jiau (who had obtained it from Ng), BCM earned illegal profits of approximately $865,158. The Government does not contend that these trading profits were foreseeable to Ng.

trading at $17.36 per share, up approximately $3.28, or approximately 23.3% over the previous day's close.

In addition, prior to the May 29, 2008 quarterly report by Marvell, Ng called Nguyen and told Nguyen, in sum and substance, that things were looking good at Marvell. Nguyen understood this to mean that Marvell would issue a positive quarterly earnings report. On May 29, 2008, the day that Marvell issued its quarterly earnings report, Nguyen purchased over $14,000 of shares of Marvell stock. Nguyen sold the stock the next day, earning profits of approximately $3,200. Similarly, Jiau purchased 875 shares of Marvell stock prior to the May 29 earnings announcement based on the Inside Information she had obtained from Ng, and, as a result, earned $3,264 in illegal profits.

### C. Stanley Ng's Efforts To Hide His Involvement in the Conspiracy

As part of an internal investigation conducted by Marvell in response to public reporting about Jiau's arrest, on or about January 4 and January 5, 2011, Marvell conducted a series of interviews of certain people in Marvell's finance department, including Stanley Ng. On the first day of interviews, when initially asked whether he knew Jiau, Ng flat-out lied and answered that he did not have any familiarity with Jiau. He subsequently acknowledged meeting her years ago but continued to lie, denying having any ongoing contact with her or providing Jiau any information about Marvell. On the second day of the interview, Ng refused to cooperate further with the internal investigation and Marvell soon terminated him.

### D. Ng's Arrest and Guilty Plea

After Jiau was convicted at trial, Ng was charged and arrested based on a complaint dated August 5, 2011. On December 7, 2011, Ng consented to the filing of a felony information that charged him in one count with conspiracy to commit wire fraud and securities fraud, in violation

5

of 18 U.S.C. § 371.  That same day, Ng pled guilty to the single-count information against him pursuant to a plea agreement.  In his plea agreement, Ng acknowledged that, through his criminal conduct, Ng abused a position of public or private trust in a manner that significantly facilitated the commission of the offense, and further agreed that the total offense level applicable to his conduct is level 10 and that the stipulated Guidelines range is 6 to 12 months' imprisonment.  During his plea allocution, Ng stated that in late 2007 and 2008, while employed as the SEC Reporting Manager at Marvell, Ng "provided material, nonpublic information to Wini Jiau and Sonny Nguyen about Marvell's quarterly financial results before those results were made public" and that he did so "[i]n exchange [for] similar stock tips from my [Ng's] coconspirators."  Ng acknowledged that he knew what he was doing was wrong and illegal at the time that he was doing it.

### III.   Consideration of the 3553(a) Factors

In determining a reasonable sentence, the sentencing judge is required to consider the factors set forth at 18 U.S.C. § 3553(a).  These factors include, among others, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the need for afford adequate deterrence to criminal conduct; and (4) the need to avoid unwarranted sentence disparity.  *See* 18 U.S.C. § 3553(a)

Ng's criminal conduct warrants a sentence within the applicable and stipulated Guidelines range of 6 to 12 months' imprisonment (Zone B).  Repeatedly from about 2007 through early 2009, the defendant breached the duties he owed to his employer Marvell by providing his co-conspirator Winifred Jiau (and on one occasion, Sonny Nguyen as well) valuable corporate information, which she then sold to hedge fund portfolio managers in New

York and Boston in an elaborate insider trading scheme. By providing Jiau with detailed financial earnings of Marvell before the company's public earnings announcement – not just once, but quarter after quarter – Ng betrayed the trust that his employer and Marvell's shareholders placed in him as the SEC Reporting Manager. Ng put his friendship and own interests ahead of those that he was duty-bound to protect. Perhaps most tellingly, Ng agreed to sell out his employer for so little in return beyond friendship and an occasional gift.

In so doing, Ng's conduct harmed not just Marvell, but the integrity of the capital markets as well. Insider trading constitutes a violation of the Securities and Exchange Act of 1934. A fundamental purpose of that statute is to ensure fair dealing and outlaw deceptive and inequitable practices in the securities markets. Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity undermined the function and purpose of a free market. Insider trading causes that harm – namely by undermining the public's confidence in the capital markets, and by suggesting to ordinary investors that they should not invest because those markets are rigged in favor of well-connected corporate insiders and Wall Street professionals. The integrity of the markets is critical to the functioning of the nation's economy, which depends upon well-functioning markets for liquidity and access to capital. It is precisely the conduct of individuals such as Stanley Ng that weakens the investing public's confidence in Wall Street and causes the public to suspect that Wall Street is rigged.

A Guidelines sentence is warranted here to deter the defendant and, even more importantly, other business and financial professionals from engaging in insider trading. As a general matter, because insider trading schemes are both highly lucrative and difficult to detect, significant punishment is necessary to deter others from similar conduct. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) ("Considerations of (general)

deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expedited benefits of a crime and hence the punishment required to deter it."). Accordingly, a sentence within the applicable Guidelines range of 6 to 12 months is needed to reflect the seriousness of Ng's offense, to deter Ng and other corporate insiders and financial professionals from engaging in similar offenses, and to restore integrity to the markets by reassuring the investing public that when conspirators like Ng are caught passing on a public company's most sensitive financial secrets, they will face real punishment through the criminal justice system.

## IV. Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the applicable Guidelines sentencing range of 6 to 12 months is appropriate.

Dated:  New York, New York
        May 1, 2012

                                Respectfully submitted,

                                PREET BHARARA
                                United States Attorney
                                Southern District of New York


                            By:  /s/ Avi Weitzman
                                Avi Weitzman
                                Assistant United States Attorney
                                (212) 637-1205